UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SHANNON KELLER, | Civil Action No.: 17-11807 |
| | Honorable Nancy G. Edmunds |
| Plaintiff | Magistrate Judge Elizabeth A. Stafford |

v.

CLEAN HARBORS, INC.,

        Defendant.

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO DISMISS FOR
<u>LACK OF PERSONAL JURISDICTION [ECF NO. 8]</u>**

## I.    Introduction

Plaintiff Shannon Keller, acting *pro se*, sues Clean Harbors, Inc. for alleged unlawful termination, retaliation, gender inequality and sex stereotyping. [ECF No. 1, PageID 1-2; ECF No. 1-11, PageID 1184].[1] Keller is a Michigan resident, while Clean Harbors is a Massachusetts corporation. [*Id.*, PageID 6; ECF No. 8-4]. Keller does not identify a specific statute under which she is suing Clean Harbors, but she made a federal EEOC claim and received a right to sue letter, thus exhausting her administrative remedies for complaints under Title VII and the Equal Pay

---

[1] The Honorable Nancy G. Edmunds referred this matter to the undersigned for all pretrial matters. [ECF No. 5].

Act. [ECF No. 1, PageID 6-7]. The conclusion that Keller is relying upon these federal statutes is further supported by her indication that she is relying upon federal question jurisdiction. [ECF No. 1-11, PageID 1184].

Clean Harbors has filed a motion to dismiss, alleging that the Court lacks personal jurisdiction over it. [ECF No. 8]. Clean Harbors claims that Keller was not its employee; it alleges that she was employed by Clean Harbors' subsidiary, Clean Harbors Environmental Services, Inc., (Environmental Services), whose registered agent is a Michigan corporation. [*Id.*; ECF No. 8-3]. Clean Harbors asserts that it does not have the requisite minimum contacts with Michigan to be sued here. [ECF No. 8]. The Court finds that Keller has presented evidence showing that she was indeed employed by Clean Harbors, and/or that Clean Harbors is an alter ego of Environmental Services. In either case, Clean Harbors is subject to personal jurisdiction in this Court and its motion to dismiss should be denied.

II.   Analysis

A.

Upon the filing of a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction over the defendant. *Neogen Corp. v. Neo*

*Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). "[T]he plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The court has the discretion to decide the motion on the affidavits, to permit discovery to aid resolution of the motion, or to conduct an evidentiary hearing. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012).

When the court relies only on the written submissions and affidavits "rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is relatively slight, and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citations and internal quotation marks omitted). And when deciding a Rule 12(b)(2) motion only on the pleadings and affidavits submitted, those documents must be viewed in a light most favorable to the plaintiff, and the court should not weigh any conflicting assertions by the party moving to dismiss. *Id.* The Court finds that the evidence presented here is sufficient to decide Clean Harbors' motion.

**B.**

A foreign corporation's motion to dismiss for lack of personal jurisdiction usually requires analysis of the forum state's long-arm statute and the requirements of due process. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) ("When a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment."). But here, neither party disputes that the usual analysis would render a finding that the Court may exercise personal jurisdiction over Keller's former employer. Instead, the parties dispute whether Clean Harbors was Keller's employer; Clean Harbors claims that Environmental Services was Keller's employer, and that Clean Harbors and Environmental Services were separate and distinct corporations.

Clean Harbors relies on four documents in support of these claims. First, it attaches a declaration from Julie Vacca-Hulak, Environmental Services' human resources director since 2012, who says that Keller was employed by Environmental Services as an account manager. [ECF No. 8-2]. It attaches a Michigan Department of Licensing and Regulatory Affairs (LARA) listing showing that Environmental Services' registered agent has a

4

Plymouth, Michigan address. [ECF No. 8-3]. And Clean Harbors attaches to its reply brief a copy of Keller's EEOC charge of discrimination in which Environmental Services was identified as her employer. [ECF No. 13-1].

Clean Harbors' primary evidence is a declaration signed by Michael R. McDonald, who states that he is the senior vice president, general counsel and assistant secretary of Clean Harbors, and an employee of Environmental Services. [ECF No. 8-4]. McDonald says that Clean Harbors is a Massachusetts corporation located in Norwell, Massachusetts. [*Id.*]. He declares that Clean Harbors is a holding company that has not provided services in Michigan, or advertised to do so. [*Id.*]. According to McDonald, Clean Harbors owns interest in several different entities, including Environmental Services, but that Clean Harbors is not licensed or qualified to conduct business in Michigan. [*Id.*]. He contends that Clean Harbors has no employees, officers, agents or distributors in Michigan; it does not own, lease or possess property in Michigan; and that it maintains no bank accounts, pays not taxes, receives no mail, and has no resident agent in Michigan. [*Id.*]. McDonald asserts that Clean Harbors' officers, records and corporate office are located in Massachusetts, and that Clean Harbors and Environmental Services "operate as separate and distinct

5

corporate entities and maintain all appropriate corporate formalities." [*Id.*]. He concludes, "At no time did Clean Harbors ever employ Plaintiff." [*Id.*].

The documents that Keller attaches to her response tell a different story.[2] Although McDonald describes Clean Harbors as owning an interest in Environmental Services, a more accurate description is that Environmental Services is Clean Harbors' wholly owned subsidiary. [ECF No. 10-3, PageID 1531-32].[3] And contrary to McDonald's claim that Keller never worked for Clean Harbors, a November 2009 letter from Clean Harbors to Keller announces, "Clean Harbors is pleased to offer you the position [of] Account Manager, reporting to Douglas Bayuk at the Sterling Heights location." [ECF No. 10, PageID 1291]. The letterhead of the employment offer showed that it was from Clean Harbors' office at 42 Longwater Drive, Norwell, Massachusetts. [*Id.*]. Prior to the offer being extended to Keller, an "offer letter request form" was processed by "CHI,"

---

[2] Although the Court credits Keller for presenting evidence that is helpful for the resolution of this motion, she is warned that her filings are **far** too voluminous. Her complaint with attachments is 1185 pages long, and her response to the motion with attachments is 419 pages long. Keller is advised to seek advice from the Court's Pro Se Clinic (313-234-2690) so that future filings will not amount to a document dump. And the Court directs Keller to not attach copies of Clean Harbors' filings to her own.
[3] See also the evidence below that establishes that Clean Harbors owns and controls Environmental Services.

6

which is the acronym used for Clean Harbors.[4]  [*Id.*, PageID 1295-96]. The form indicated that Keller would work as an account manager for the Michigan location, under a department described as "US Sales Central." [*Id.*].  Notably, a Yellow Pages advertisement for "Clean Harbors Inc" states that it is located in Sterling Heights, Michigan—the same city that Keller was told she would be working in the offer letter.  [ECF No. 10, PageID 1294].

     Keller's employment with Clean Harbors was conditioned on her agreement to, among other things, sign a confidentiality and non-competition agreement.  [*Id.*, PageID 1291].  Keller's filing includes three such agreements that she signed.  The 2012 agreement is between her and "Clean Harbors, Inc. ('Corporation'), on its behalf and on behalf of its subsidiaries and affiliates," and Keller is identified as being an employee of "Clean Harbors."  [*Id.*, PageID 1268-70].  The 2014 agreement is between "Clean Harbors, Inc., ('Employer')" and Keller.  [*Id.,* PageID 1271-81].  And the 2015 agreement is between Keller and "Clean Harbors, Inc., including any of its subsidiaries, affiliated, or parent companies with whom

---

[4] In Clean Harbors' brief, it refers to itself as "CHI" and to its subsidiary as "Environmental Services."  [ECF No. 8].

Employees works or has worked (collectively referred to as 'Clean Harbors' and 'the Company')." [*Id.*, PageID 1284-89].

Other evidence shows that Clean Harbors treated Keller as one of its employees. Effective December 2009, Clean Harbors approved a car allowance for Keller at the "MICHIGAN: Sterling Heights Service Cente[r]." [*Id.*, PageID 1293]. Later, Clean Harbors awarded Keller with a certificate of appreciation for her five years of service. [*Id.*, PageID 1297]. An August 2013 email to Keller from Clean Harbors' chairman and chief executive officer Alan S. McKim, addressed to "All Employees," described a company-wide alcohol and drug policy. [ECF No. 10-3, PageID 1546]. In January 2015, Clean Harbors' corporate card program manager sent Keller a "Private & Confidential" letter to notify her that her company Visa account had been cancelled due to an unpaid balance. [ECF No. 10-3, PageID 1548].

This evidence supports Keller's claim that she was a Clean Harbors' employee, based in Michigan. And this evidence, in combination with other evidence that Keller presents, suggests that Clean Harbors and Environmental Services are alter egos of one another.

8

## C.

The alter-ego theory of personal jurisdiction "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (citations and internal quotation marks omitted). To determine whether an alter-ego relationship existed, the Court must consider whether Clean Harbors and Environmental Services (1) shared the same employees and corporate officers; (2) engaged in the same business enterprise; (3) had the same address and phone lines; (4) used the same assets; (5) completed the same jobs; (6) maintained the same books, tax returns and financial statements; and (7) whether Clean Harbors exerted control over the daily affairs of Environmental Services. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848–49 (6th Cir. 2017).

Concerning the first factor, Keller's documents show that most of Environmental Services' corporate officers have also been officers of Clean Harbors. From 2009 to 2016, the Environmental Services officers have been Alan McKim, C. Michael Malm, Janet Frick, James Rutledge, Eric

9

Gerstenberg, Gregory Malerbi, Michael Battles and McDonald. [ECF No. 10-4, PageID 1631-35, 1640]. McKim served as president until 2012, and has remained a director since then. [*Id.*]. The record evidences that all but Frick and Malerbi have also served on Clean Harbors' board, and that McKim is Clean Harbors' founder, board chair, president and CEO, and has owned more than 85% of the stock during the relevant period. [ECF No. 8-4; ECF No. 10-2, PageID 1442, 1446, 1448-54, 1457, 1462, 1466, 1469, 1475, 1477, 1480-81, 1487, 1491, 1496, 1517]. And while McDonald identified himself as a mere "employee" of Environmental Services, he is identified as Environmental Services' vice president on a 2016 LARA form. [ECF No. 8-4, PageID 1218; ECF No. 10-4, PageID 1639].

Within its documents, Clean Harbors commonly refers to it and its subsidiaries under the umbrella of "the Company." [*See, e.g.,* ECF No. 10, PageID 1268, 1271, 1284; ECF No. 10-2, PageID 1475]. On a 2017 document regarding the Company's current executive officers, Gerstenberg is identified as the chief operating officer of the Company, and the "President, Environmental Services." [ECF No. 10-2, PageID 1475]. Gerstenberg did, in fact, assume the presidency of Clean Harbors Environmental Services after McKim. [ECF No. 10-4, PageID 1634-39]. As president of Environmental Services, Gerstenberg signed an "Equal

10

Opportunity Policy Statement" on a document with Clean Harbors' logo. [ECF No. 10-3, PageID 1545]. The statement says that, in order to ensure that Clean Harbors' policies were implemented "throughout all levels of the company," Gerstenberg had "selected Lucille M Franzzetti as the EEO Coordinator for Clean Harbors." [*Id.*]. In other words, in his capacities as both an executive officer of Clean Harbors and president of Environmental Services, Gerstenberg directed that Clean Harbors' policies applied to those working for Environmental Services, and hired the EEO Coordinator to implement those policies to Clean Harbors *and* all of its subsidiaries—the Company. [*Id.*].

Turning to the second factor, both Clean Harbors and Environmental Services are engaged in environmental services. Clean Harbors advertised itself on an investor fact sheet as being "North America's leading provider of environmental, energy and industrial services," operating "through the United States, Canada, Mexico and Puerto Rico." [ECF No. 10-2, PageID 1450]. Environmental Services' name, as well as its LARA documents, also identify it as providing environmental services. [ECF No. 10-4, PageID 1633].

The third factor also weighs in favor of finding that Clean Harbors and Environmental Services are alter egos of one another, as Environmental

11

Services shares the corporate address of 42 Longwater Drive, Norwell, Massachusetts with Clean Harbors, [ECF No. 10-2, PageID 1446, 1456; ECF No. 10-3, PageID 1535], despite Environmental Services' registration with LARA in Michigan.  Notably, the only documentation referring to Sterling Heights in the record is associated with Clean Harbors, not Environmental Services.  [ECF No. 10, PageID 1291, 1294].

The next three factors address whether Clean Harbors and Environmental Services used the same assets, completed the same jobs, and maintained the same books, tax returns and financial statements. Keller appends to her response documents of consolidated financial statements for "Clean Harbors, Inc. and Subsidiaries."  [ECF No. 10-2, PageID 1425-45].  Investor fact sheets also appear to incorporate Clean Harbors' subsidiaries, as it referenced its performance throughout the United States.  [*Id.,* 1448-54].  Since Environmental Services is Clean Harbors' wholly owned subsidiary, [ECF No. 10-3, PageID 1531-32], it can be assumed that Environmental Services' performance was included on the consolidated financial statements and investor fact sheets.  Tellingly, a summary compensation table for Clean Harbors' corporate officers references Environmental Services, appearing to indicate that some salaries were related to that subsidiary.  [ECF No. 1491].

12

The final factor weighs heavily in favor finding that Clean Harbors is Environmental Services' alter ego, as the evidence suggests that it maintained total control over Environmental Services' operations. As noted above, Clean Harbors processed Keller's work application and offered her the job, [ECF No. 10, PageID 1291, 1295-96]; Clean Harbors dictated the terms of the noncompetition agreements that Keller was required to sign, [*Id.*, PageID 1268-81, 1284-89]; Clean Harbors oversaw Keller's car allowance and recognized her years of service, [*Id.*, PageID 1293, 1297]; Keller was forwarded Clean Harbors company-wide alcohol and drug policy, [ECF No. 10-3, PageID 1546]; Clean Harbors oversaw Keller's company issued Visa account, [ECF No. 10-3, PageID 1548]; and Clean Harbors equal employment opportunity policies applied to employees at Environmental Services, [*Id.*, PageID 1545].

Another document shows that Clean Harbors entered into a blanket purchase agreement with the United States Navy to provide environmental services in 15 states, including Michigan. [ECF No. 10, PageID 1391]. The work in Michigan would presumably have been carried out by Environmental Services personnel, a conclusion that is supported by Keller's statements in her response that Clean Harbors has no employees

13

and "does not provide environmental services to customers, its subsidiaries do." [ECF No. 10, PageID 1236].

The above evidence suggests that, while Environmental Services was identified on LARA documents filed in Michigan, Clean Harbors was in actuality operating the business in Michigan and did not treat Environmental Services as an independent business.

In its reply, Clean Harbors largely ignores Keller's evidence, and relies upon an argument that McDonald's declaration is dispositive. [ECF No. 13, PageID 1649]. Given the evidence showing that Clean Harbors hired Keller and entered into noncompetition agreements with her for her work in Michigan; given the evidence that Clean Harbors advertised in the Yellowpages in Michigan; and given the evidence that Clean Harbors performed work for the Navy in Michigan, the Court finds unpersuasive McDonald's assertions that Keller never worked for Clean Harbors, that Clean Harbors has no employees in Michigan, and that it has never advertised or performed work in Michigan. [ECF No. 8-4]. And given all of the evidence discussed above, McDonald's representation that Clean Harbors and Environmental Services "operate as separate and distinct corporate entities and maintain all appropriate corporate formalities," is wholly incredible. [*Id.*]. McDonald's declaration is far from dispositive.

14

**D.**

Since Clean Harbors' motion to dismiss relied exclusively upon its claim that it did not employ Keller and that it is a separate and distinct entity from Environmental Services, and since those claims lack credibility, Clean Harbors' motion to dismiss could be denied on that basis. However, in an abundance of caution, and considering that Keller does bear the burden of establishing personal jurisdiction, the Court will briefly address the requirements of Michigan's long-arm statute and due process.

Under Michigan's long-arm statue, limited personal jurisdiction over a nonresident corporation is established for claims "arising out of the act or acts which create any of the following relationships," including "[t]he transaction of any business within the state," "[t]he doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort," and the "[e]ntering into a contract for services to be performed or for materials to be furnished in the state by the defendant." M.C.L. § 600.715(5). The slightest act of business establishes personal jurisdiction in Michigan. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

Here, the evidence cited above establishes that Clean Harbors entered into employment and confidentiality agreements with Keller, and

Keller fulfilled her obligations under those agreements in Michigan. And the evidence shows that Clean Harbors advertised for and provided environmental services in Michigan, in its own name and through its alter ego, Environmental Services. Jurisdiction over Clean Harbors is proper under Michigan's long-arm statute.

> (1) the defendant must personally avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from defendant's activities there; and (3) the acts of defendant or consequences caused by defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

To satisfy due process requirements, the exercise of personal jurisdiction over a foreign defendant must satisfy three requirements:

*Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). The evidence cited above shows that Clean Harbors personally availed itself of the privilege of acting in Michigan by hiring Keller and carrying out business here; that Keller's complaint arises out of her employment relationship with Clean Harbors while she was working in Michigan; and that Clean Harbors' employment relationship with Keller and the business it conducted in Michigan make the exercise of jurisdiction over it reasonable.

Keller has met her burden for establishing that the Court's exercise of jurisdiction over Clean Harbors would be proper, and the motion to dismiss should therefore be denied.

### III. Conclusion

Clean Harbors' motion to dismiss for lack of personal jurisdiction **[ECF No. 10]** should be **DENIED.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 31, 2018

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 31, 2018.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
