UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON KELLER,

                                    Civil Action No.: 17-11807
                                    Honorable Nancy G. Edmunds
                    Plaintiff       Magistrate Judge Elizabeth A. Stafford

v.

CLEAN HARBORS, INC.,

                    Defendant.


**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 45]**

## I.    Introduction

Plaintiff Shannon Keller, acting *pro se*, sues Clean Harbors, Inc. for

alleged gender discrimination and retaliation under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Equal Pay Act (EPA), 29

U.S.C. §206(d); and Michigan's Elliot-Larsen Civil Rights Act (ELCRA),

M.C.L. § 37.2202 *et seq.*  [ECF No. 36, PageID 2140].[1]

Clean Harbors moves for summary judgment, arguing that Keller's

claims fail because the Clean Harbors entity she sued was not her

employer under the controlling statutes.  [ECF No. 45].  Clean Harbors also

_____

[1] The Honorable Nancy G. Edmunds referred this matter to the
undersigned for all pretrial matters.  [ECF No. 5].

asserts that Keller fails to establish a *prima facie* case for gender discrimination or retaliation, much less rebut Clean Harbors' legitimate, nondiscriminatory business reasons for terminating her employment.  [*Id.*] The Court finds that Keller has not established a *prima facie* case of gender discrimination or retaliation, nor shown that Clean Harbors' articulated reason for terminating her was a pretext for an unlawful motive. Clean Harbors' motion for summary judgment should be granted.

## II.   Factual Background

Keller was employed as a sales manager with Clean Harbors Environmental Services, a subsidiary of Clean Harbors, from December 2009 until she was terminated in January 2016, allegedly due to a corporate reorganization.  [ECF No. 36, PageID.2141].  She holds a bachelor's degree of science in communications from Eastern Michigan University. [*Id.*]

From 2009 until 2013, Keller worked as an account manager under the supervision of Douglas Bayuk. [*Id.,* PageID.2143].  She was "responsible to grow, expand, and maintain a required minimum base of revenues and number of customers within an assigned territory."  [ECF No. 61, PageID.3466].  According to Keller, she received satisfactory to

2

outstanding performance reviews and increased revenue during this time.
[ECF No. 36, PageID.2143; ECF No. 61, PageID.3491-3518].

In May 2013, Keller began reporting to a new supervisor, Matt
Coulter, and she received the new title of vertical account manager
following a reorganization of the sales department in 2014.  [ECF No. 36,
PageID.2144-2146].  Keller alleges that Clean Harbors began realigning
sales territories in 2014, shifting to her male colleagues revenue and
accounts for which she had been responsible.  [*Id.*; ECF No. 61].  In early
2015, Keller was assigned additional territory in Michigan and Ohio, but she
says that the new territory did not offset the revenue she lost.  [ECF No. 36,
PageID.2149].

Keller also alleges that in August 2015, her airport account was
transferred to yet another male peer after she challenged a negative
performance review.  [*Id.*, PageID.2151].  She testified by affidavit that she
repeatedly complained to her supervisor and others in management about
the disparate treatment she was receiving from account reassignments.
[*Id.*; ECF No. 61-1].  In early 2016, Clean Harbors terminated Keller's
employment, citing a workforce reduction and reorganization. [ECF No. 45-
2].  Keller's amended complaint identifies male colleagues with less
seniority and an insufficient "skill set" who were retained, as well as a male

3

sales manager with no college degree hired from outside the company within weeks of her termination.  [ECF No. 36, PageID.2155].  She maintains that she was selected for termination because of gender discrimination and in retaliation for her complaints about receiving disparate treatment. [*Id.*].

Clean Harbors personnel testified that it often moved accounts between sales employees for a variety of reasons.  [ECF No. 45-3, Douglas Bayuk Decl.,¶¶6-8; ECF No. 45-5, Teri Myers Decl.,¶7; ECF No. 45-6, David Parry Decl.,¶6]. They acknowledged that Keller complained about the transfer of her accounts, but the witnesses testified that many male sales employees lodged the same complaints about account losses, and that Keller had not complained that her account losses were based on gender, or a result of discrimination or retaliation.  [ECF No. 45-3, Bayuk Decl.,¶7; ECF No. 45-5, Meyers Decl.,¶¶6-8; ECF No. 45-6. Parry Decl.,¶7].  David Parry, the former president of Clean Harbors Environmental Services, testified that, based on the sales data, the changes to Keller's accounts during 2014 and 2015 were consistent with account changes for other account managers and vertical account managers, both male and female.  [ECF No. 45-6, ¶6]. Parry also testified

that Keller's duties were absorbed by others who were all existing employees at the time of her termination. [ECF No. 62-2, ¶4].

### III.    Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But "[t]he failure to present any evidence to counter a well-

supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).  A scintilla of evidence is also insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff."  *Liberty Lobby*, 477 U.S. at 252.  And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott,* 550 U.S. at 380.

### B.

The parties dispute whether Clean Harbors was Keller's employer. In its motion for summary judgment, Clean Harbors argues that it does not meet the statutory definition of "employer" under Title VII or ELCRA.  Clean Harbors claims that Clean Harbors Environmental Services was Keller's employer, and that Clean Harbors and Clean Harbors Environmental Services were separate and distinct corporations.

But for purposes of Title VII and ELCRA claims, companies can be so intertwined that they constitute a single employer.  *Harrison v. Soave Enterprises*, 2019 WL 296699, at *2–3 (E.D. Mich. Jan. 23, 2019) (citing *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir. 1997)).  Courts use three approaches to examine whether two companies

6

may constitute one employer: (1) courts examine whether two entities are

so interrelated that they may be considered as one, (2) courts consider

whether one defendant has control over another company's employees

sufficient to show that the two companies are acting as a "joint employer,"

and (3) courts examine whether the person or entity that took the allegedly

illegal employment action was acting as the agent of another company.

*Swallows*, 128 F.3d at 992-93 (citations omitted).

Two legally distinct corporations can be considered joint for Title VII

and ELCRA claims.

> A conclusion that employers are "joint" assumes that they are
> separate legal entities, but that they ... handle certain aspects
> of their employer-employee relationship jointly.  Where this
> doctrine is operative, an employee, formally employed by one
> entity, who has been assigned to work in circumstances that
> justify the conclusion that the employee is at the same time
> constructively employed by another entity, may impose liability
> for violations of employment law on the constructive employer,
> on the theory that this other entity is the employee's joint
> employer.

*Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 593 (6th

Cir. 2009) (citation and internal quotation marks omitted).  Courts have

recognized factors such as the supervision of the employees' day to day

activities; authority to hire, discipline, or fire employees; promulgation of

work rules and conditions of employment; work assignments and issuance

of operating instructions, pay, insurance and records; and participation in

7

the collective bargaining process in determining whether a defendant is a joint employer.  *Bolin v. General Motors, LLC*, 2017 WL 3675611, at *11 (E.D. Mich. Aug. 25, 2017) (citing *Rivas v. Fed. De Asociaciones Pecuarias*, 929 F.2d. 814, 820-21 (1st Cir. 1991) (collecting cases)).

As this Court detailed in its report and recommendation on Clean Harbors' motion to dismiss, [ECF No. 17], several facts support Keller's claim that Clean Harbors should be considered her employer. First, Clean Harbors hired Keller; the letterhead of the employment offer showed that it was from Clean Harbors' office at 42 Longwater Drive, Norwell, Massachusetts and offered Keller the position of account manager at the Sterling Heights location.  [ECF No. 45-4, PageID.2265].

Second, Keller's employment with Clean Harbors was conditioned on her agreement to, among other things, sign a confidentiality and non-competition agreement.  [*See* ECF No. 17].   Keller's previous filings includes three such agreements that she signed.  The 2012 agreement is between her and "Clean Harbors, Inc. ('Corporation'), on its behalf and on behalf of its subsidiaries and affiliates," and Keller is identified as an employee of "Clean Harbors."  [ECF No. 10 PageID 1268-70].  The 2014 agreement is between "Clean Harbors, Inc., ('Employer')" and Keller.  [*Id.,* PageID 1271-81].  And the 2015 agreement is between Keller and "Clean

8

Harbors, Inc., including any of its subsidiaries, affiliated, or parent companies with whom Employees works or has worked (collectively referred to as 'Clean Harbors' and 'the Company')."  [*Id.*, PageID 1284-89].

Other evidence shows that Clean Harbors treated Keller as one of its employees.  Effective December 2009, Clean Harbors approved a car allowance for Keller at the "MICHIGAN: Sterling Heights Service Cente[r]."  [*Id.*, PageID 1293].  Later, Clean Harbors awarded Keller with a certificate of appreciation for her five years of service.  [*Id.*, PageID 1297].  An August 2013 email to Keller from Clean Harbors' chairman and chief executive officer Alan S. McKim, addressed to "All Employees," described a company-wide alcohol and drug policy.  [ECF No.  10-3, PageID 1546].  And in January 2015, Clean Harbors' corporate card program manager sent Keller a "Private & Confidential" letter to notify her that her company Visa account had been cancelled because of an unpaid balance.  [ECF No. 10-3, PageID 1548].

The Court finds that this evidence supports Keller's claim that Clean Harbors was her employer for Title IV and ELCRA purposes.

## C.

Clean Harbors similarly argues that Keller failed to exhaust her administrative remedies because she identified Clean Harbors

9

Environmental Services in her EEOC charge, but named Clean Harbors in this lawsuit.  It is true that, "as a general rule, a plaintiff may only sue an entity for violating…Title VII if it named the same entity in its prior EEOC charge. *Lockhart v. Holiday Inn Express Southwind,* 531 F. App'x 544, 546 (6th Cir. 2013).  But Keller has demonstrated an exception to that rule, namely that there exists an "identity of interest" between the entity she named in her EEOC charge (Clean Harbors Environmental Services) and the entity she ultimately sued (Clean Harbors). *Romain v. Kurek*, 836 F2d 241, 245 (6th Cir. 1987).  This exception "acknowledges the reality that laymen, unassisted by trained lawyers, initiate the process of filing a charge with the EEOC, and accordingly prevents frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge." *Id.*

In this circuit, two tests are generally applied to determine if the "identity of interest" exception applies. The first test requires courts to consider if "the unnamed party has been provided with adequate notice of the charge under circumstances which afford him an opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Id.* The second test has four factors that the court can consider in determining the relationship between the unnamed and named parties when the charge was filed:

(1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

(2) Whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

(3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

(4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Romain*, 836 F.2d at 245 (internal brackets omitted); *see also E.E.O.C. v. Care Centers Mgt. Consulting, Inc.*, 942 F. Supp. 2d 771, 775 (E.D. Tenn. 2013) (same); *Knafel v. Pepsi-Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1481 (6th Cir. 1990) (identity of interest exists between parent and subsidiary companies that are virtual alter egos).

Clean Harbors does not suggest it lacked adequate notice of Keller's EEOC charges, nor assert actual prejudice under the second prong of the test. The remaining factors weigh in favor of finding an identity of interest between Clean Harbors Environmental Services and Clean Harbors, so Keller's failure to name Clean Harbors in her EEOC charge should be excused.

Most tellingly, Clean Harbors Environmental Services has in almost every way represented to the complainant that its relationship with the complainant is one and the same as her relationship with Clean Harbors. Clean Harbors commonly refers to it and its subsidiaries under the umbrella of "the Company." [*See, e.g.,* ECF No. 10, PageID 1268, 1271, 1284; ECF No. 10-2, PageID 1475]. Both entities are engaged in environmental services. Clean Harbors advertised itself on an investor fact sheet as "North America's leading provider of environmental, energy and industrial services," operating "through the United States, Canada, Mexico and Puerto Rico." [ECF No. 10-2, PageID 1450]. Clean Harbors Environmental Services' name, as well as its LARA documents, also identify it as providing environmental services. [ECF No. 10-4, PageID 1633].

Evidence also suggests that Clean Harbors maintained total control over Clean Harbors Environmental Services' operations. As noted, Clean Harbors processed Keller's work application and offered her the job, [ECF No. 10, PageID 1291, 1295-96]; Clean Harbors dictated the terms of the noncompetition agreements that Keller had to sign, [*Id.*, PageID 1268-81, 1284-89]; Clean Harbors oversaw Keller's car allowance and recognized her years of service, [*Id.*, PageID 1293, 1297]; Keller was forwarded Clean Harbors company-wide alcohol and drug policy, [ECF No. 10-3, PageID

1546]; Clean Harbors oversaw Keller's company issued Visa account, [ECF No. 10-3, PageID 1548]; and Clean Harbors equal employment opportunity policies applied to employees at Clean Harbors Environmental Services. [*Id.*, PageID 1545].

And the interests of Clean Harbors Environmental Services are so aligned with Clean Harbors that, to obtain voluntary conciliation and compliance, it would have been unnecessary to include the Clean Harbors in the EEOC proceedings.  Clean Harbors and Clean Harbors Environmental Services share the same corporate address of 42 Longwater Drive, Norwell, Massachusetts.  [ECF No. 10-2, PageID 1446, 1456; ECF No. 10-3, PageID 1535].  And most of Clean Harbors Environmental Services' corporate officers have also been officers of Clean Harbors.  From 2009 to 2016, the Clean Harbors Environmental Services officers have been Alan McKim, C. Michael Malm, Janet Frick, James Rutledge, Eric Gerstenberg, Gregory Malerbi, Michael Battles and Michael McDonald.  [ECF No. 10-4, PageID 1631-35, 1640].  McKim served as president until 2012 and has remained a director since then.  [*Id.*].  The record evidences that all but Frick and Malerbi have also served on Clean Harbors' board, and that McKim is Clean Harbors' founder, board chair, president and CEO, and has owned more than 85% of the stock during the

13

relevant period.  [ECF No. 8-4; ECF No. 10-2, PageID 1442, 1446, 1448-54, 1457, 1462, 1466, 1469, 1475, 1477, 1480-81, 1487, 1491, 1496, 1517].

The Court thus concludes that an identity of interest exists between Clean Harbors and Clean Harbors Environmental Services.

### D.

Clean Harbors argues that Keller cannot pursue claims for acts of discrimination or retaliation before her January 2016 termination.  Because only EEOC charges of retaliation and discrimination filed within 300 days of the retaliatory or discriminatory incident are actionable, Clean Harbors maintains that the alleged retaliatory or discriminatory actions against Keller occurring before September 21, 2015 are time-barred. *See Cantu v. Michigan Dep't of Corr.*, 653 F.Supp. 2d 726, 736 (E.D. Mich. 2009).  Keller argues that she can use the time-barred alleged discriminatory and retaliatory acts, the re-assignments of her accounts, as background evidence in support of her remaining claimed discriminatory and retaliatory act, the 2016 termination.  "[T]he Supreme Court has stated that an employee is not barred 'from using the prior acts as background evidence in support of a timely claim.'"  *Webb v. Paducah Bd. of Educ.*, 2018 WL 912499, at *4 (W.D. Ky. Feb. 15, 2018) (quoting *Nat'l R.R. Passenger*

14

*Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Keller may use the account transfers as background evidence to support her claim that her termination was based on discrimination or retaliation.

### E.

Keller brings gender discrimination claims under Title VII and ELCRA. Gender discrimination claims brought under the ELCRA are analyzed under the same standards as claims of gender discrimination brought under Title VII. *Williams v. Serra Chevrolet Automotive, LLC,* 4 F.Supp.3d 865, 873 (E.D.Mich. 2014). The Court will therefore analyze both gender discrimination claims under the standard for Title VII discrimination claims.

Under Title VII, it is an "unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." § 2000e-2(a)(1). Gender discrimination claims can be established by either direct or circumstantial evidence. *Williams*, 4 F.Supp.3d at 873–74. Without direct evidence of gender discrimination, the familiar *McDonnell Douglas* burden-shifting framework applies. *Id.* (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under this framework, the burden of production

15

shifts, but the plaintiff continues to bear the ultimate burden of proving the intent to discriminate. *Id.,* at 874.

Keller may establish a *prima facie* case of gender-based disparate treatment by showing that she: (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for the job, and (4) was replaced by someone outside the protected class or treated differently than similarly situated male employees for the same or similar conduct. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 589 (6th Cir. 2014). If she "establishes a *prima facie* case of gender discrimination, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the employment action." *Humenny v. Genex Corp*, 390 F.3d 901, 906 (6th Cir. 2004). If the defendant employer satisfies this burden of production, "the plaintiff must then produce evidence that the defendant's proffered reason is a pretext for discrimination." *Id.*

Clean Harbors argues that Keller cannot establish the fourth element of her *prima facie* case, which requires her to show that she was replaced by someone outside the protected class or that similarly situated male co-workers were treated more favorably. Clean Harbor also argues that, even if Keller could establish the fourth element, she cannot show that her

16

employer's legitimate nondiscriminatory reasons for her termination were a pretext for gender discrimination. This Court agrees.

Keller asserts she was discriminated against based on her gender because she was replaced by a new male employee, hired from outside the company within weeks of her termination, despite Clean Harbors' claim that Keller was terminated as part of a workforce reduction and reorganization. [ECF No. 61, PageID.3449].  But Keller relies solely on conjecture to satisfy the fourth element of her *prima facie* case.  She cites Clean Harbors' 2015 annual shareholders' report announcing the addition of 60 sales positions company-wide for 2016, but presents no evidence to support the allegation of a local new hire.

"A person is considered replaced only when another employee is hired or reassigned to perform the plaintiff's duties. A person is not considered replaced when her duties are absorbed by another person or when the work is redistributed among other existing employees already performing related work." *Geiger v. Tower Automotive*, 579 F.3d 614, 623 (6th Cir. 2009) (citing *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)).  Former Clean Harbors Environmental Services President, David Parry, testified that Keller's duties were absorbed by other existing Clean Harbors employees after her termination. [ECF No. 62-2, Parry Decl., ¶4].

17

Keller offers no evidence to rebut this testimony, so she has not made a *prima facie* case that her termination was because of gender discrimination.

Keller also claims she was discriminated against based on her gender because she was treated differently than her similarly situated male colleagues. She alleges that her most lucrative accounts were transferred from her and assigned to male co-workers. [ECF No. 61, PageID.3443-3445]. She argues that these actions were adverse because they diminished her income, and because they significantly undercut her revenue performance—a key indicator Clean Harbors relied on in selecting her for termination in the workforce reduction and reorganization.

Other than her subjective opinion and belief, Keller presents no evidence that similarly situated male co-workers were treated more favorably than her. Contrary to her conjecture that she was disproportionately affected by the shuffling of accounts, key members of Clean Harbors' management, including Keller's direct supervisor and the Clean Harbors Environmental Services president, all testified that it was common practice to reassign customers and territories among sales managers. [ECF No. 45-3, Bayuk Decl., ¶¶7-8; ECF No. 45-6, Parry Decl., ¶6]. Those witnesses said that Keller's male co-workers expressed the

same frustrations and lodged the same complaints about account changes as Keller did.  [*Id*.].  Parry specifically testified that, based on his personal knowledge of the 2014-2015 sales data, the changes to Keller's account assignments were in line with the other account managers and vertical account managers, both male and female. [ECF No. 45-6, ¶6].

Keller has not come forward with any admissible evidence to rebut that testimony or to otherwise support her claim that she was treated less favorably than her male counterparts relative to customer and territory reassignment.  Mere subjective beliefs cannot create a genuine issue of material fact on the disparate treatment element of her *prima facie* gender discrimination case. *See Williams v. Serra Chevrolet Auto., LLC*, 4 F. Supp. 3d 865, 875 (E.D. Mich. 2014) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008)).

And even if Keller had successfully made out a *prima facie* case of gender discrimination because of disparate treatment, Clean Harbors has stated legitimate, nondiscriminatory reasons for the adverse action against Keller. Clean Harbors commonly moved accounts between sales employees to balance workload, geography and customer needs.  [ECF No. 45-3, Bayuk Decl., ¶6; ECF No. 45-6, Parry Decl., ¶6]. The burden thus shifts back to Keller to show that the articulated reasons were pretextual.

19

*See Bailey*, 2017 WL 3616478, at \*10. Keller has proffered no evidence to negate Clean Harbors' articulated, nondiscriminatory reason for transferring her accounts, nor has she provided anything more than conjecture that the transfer of accounts disadvantaged her disproportionately to her male colleagues. She has not rebutted Clean Harbors' justification for its adverse action against her, or otherwise showed it to be pretext for an unlawful motive. *See id.*, at \*14. The Court recommends granting summary judgment to Clean Harbors on Keller's gender discrimination claims.

## F.

Keller asserts that her continued removal from lucrative accounts and her termination were in retaliation for protesting discriminatory account assignment practices.  As with the gender discrimination claims, her retaliation claims are brought under Title VII and the ELCRA respectively, and the *McDonnell Douglas* burden-shifting framework applies to each of these claims. *See Bailey,* 2017 WL 3616478, at \*16. To establish a *prima facie* case of retaliation, a plaintiff must establish that (1) she engaged in protected activity, (2) defendants knew of her protected activity, (3) defendants then took an adverse employment action against her, and (4) there is a causal connection between the protected activity and the adverse employment action.  *Williams*, 4 F. Supp. 3d at 877. Clean Harbors argues

20

that Keller cannot establish the knowledge element of her *prima facie* case of retaliation. This Court agrees.

"Circumstantial evidence can support a reasonable inference of the decisionmaker's knowledge if the evidence is comprised of specific facts and not merely conspiratorial theories, flights of fancy, speculations, hunches, intuitions, or rumors."  *Evans v. Prof. Transp., Inc.*, 614 F. App'x 297, 300 (6th Cir. 2015) (citations and internal quotation marks omitted).  A plaintiff cannot establish the second element of the *prima facie* case of retaliation merely by showing that the defendant had "general corporate knowledge" of the alleged protected activity; she must show that the decisionmaker knew of her involvement in the protected conduct.  *Id.* at 300-301 (citing *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir.2007)).

Keller acknowledges both that David Parry decided to terminate her employment with Clean Harbors and that she never complained to Parry about discrimination or retaliation.  [ECF No. 45-2, Keller Dep., PageID.2256-2257].  She testified that she "assumed" Parry was aware of her complaints based on his role in approving bonuses and decisions on account management, but conceded that she had no information or evidence that Parry knew she was complaining of discriminatory account

21

assignments. [*Id.* at PageID.2257]. As Clean Harbors argues, speculation and conjecture are not enough to defeat summary judgment.  *Arendale*, 519 F.3d at 601. With no evidence that Parry, the decisionmaker, knew of Keller's complaints about discriminatory assignment practices, Keller cannot satisfy the second element of a *prima facie* retaliation claim. *See Evans*, 614 F. App'x at 300.  Summary judgment for Clean Harbors is thus appropriate.

## G.

Keller also alleges that Clean Harbors violated the EPA. "The EPA prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work."  *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006).  "[T]o establish a prima facie case of wage discrimination under the EPA, plaintiffs must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Id.* (internal quotation marks omitted). Clean Harbors maintains that Keller has advanced no admissible evidence to support a *prima facie* case of wage discrimination, and that she has abandoned that claim by failing to address it in her response to its motion for summary judgment.

22

A plaintiff is deemed to have abandoned a claim when she fails to address it in response to a motion for summary judgment. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). Keller's response brief's only mention of the EPA claim is the citation to the EPA itself.  Keller presents no argument or analysis to rebut Clean Harbors' motion as it relates to that claim, so summary judgment of Keller's EPA claim should be granted.

## IV.    Conclusion

The Court **RECOMMENDS** that Clean Harbors' motion for summary judgment **[ECF No. 45]** be **GRANTED.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: April 30, 2019

<u>**NOTICE TO THE PARTIES REGARDING OBJECTIONS**</u>

Either party to this action may object to and seek review of this report and recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this report and recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Not later than 14 days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 30, 2019.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
